Matthew D. Pearson (SBN 294302)
mpearson@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone: 714.754.6600
Facsimile: 714.754.6611

*Attorney for Defendant*
PRIME HEALTHCARE SERVICES, INC.

**IN THE UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

R.S., individually and on behalf of all others similarly situated,

Plaintiff,

v.

PRIME HEALTHCARE SERVICES, INC.,

Defendant.

Case No.: 5:24-cv-00330-ODW-SP

**DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF R.S.'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

**Date: June 10, 2024**
**Time: 1:30 p.m.**
**Crtrm.: 5D**

Complaint filed: 02/08/2024
Complaint served: 03/04/2024

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

## I. <u>INTRODUCTION</u>

Plaintiff R.S. ("Plaintiff") devotes her entire Opposition to Defendant Prime Healthcare Services, Inc.'s ("Prime") Motion to Dismiss to one thing: the crime-tort exception to the party exception of the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511(1), *et seq*. And for good reason: the crime-tort exception is the only thing that could possibly save Plaintiff's claim here.

The problem, however, is that the crime-tort exception does not and cannot apply to the facts alleged in the Complaint. The crime-tort exception applies where a party to a conversation intercepts, or, in this case, procures the interception, of a communication "***for the purpose***" of committing a crime or tort in violation of state or federal law. That is, where a party to a communication violates the ECPA so that it can later commit some other crime or tort, the crime-tort exception applies.

That is clearly not the case here. Not even Plaintiff believes that Prime installed trackers on its website so that it could later break the law. Plaintiff alleges that Prime "used the wire or electronic communications to increase its profit margins" and "to track and utilize Plaintiff's and Class Members' PII and PHI for financial gain." [Dkt. No. 1, ¶ 242.] Needless to say, for the purpose of "increasing profit margins" is not the same as for the purpose of breaking the law.

That Plaintiff now claims that Prime "invaded her privacy" and violated her rights under the Health Insurance Protection and Affordability Act ("HIPAA") is of no moment. **First**, Plaintiff has alleged no facts that would suggest, let alone establish, that Prime's purpose for allowing Facebook to allegedly intercept her communication was to violate HIPAA or invade her privacy. Thus, even if, as Plaintiff alleges, Prime intercepted her communications and, later, used those communications to commit a crime or tort, that still is not enough. Plaintiff must allege facts to establish that, at the time Prime intercepted her communications, Prime's purposes for doing so was to break the law. Plaintiff has alleged no facts to support this conclusion. **Second**, even if Plaintiff had alleged the requisite intent

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

(she has not), for the crime-tort exception to apply, the "crime-tort" must be separate and distinct from the actual interception, which it is not here. Here, the crime/tort alleged (i.e., disclosure) and the interception (i.e., allowing Facebook to "listen" in to her communications) were one and the same.

Plaintiff has failed to establish that the crime-tort exception applies. Therefore, Plaintiff has failed to state a claim under the ECPA, and the Complaint must be dismissed.

## II. <u>THE ECPA'S CRIME-TORT EXCEPTION DOES NOT APPLY.</u>

As an initial matter, the plain language of 18 U.S.C. § 2511(d) makes clear that the crime-tort exception only applies to the actual interception of a communication.

> It shall not be unlawful under this chapter for a person not acting under color of law to ***intercept*** a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is ***intercepted*** for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(d) (emphasis added). And, of the three ECPA sections under which Plaintiff attempts to hold Prime liable here [Dkt. No. 1, ¶¶ 233, 237–38 (alleging Prime violated 18 U.S.C. §§ 2511(a), (c), and (d), respectively)], only § 2511(a) regulates the actual interception of communications. Sections 2511(c) and 2511(d) regulate the disclosure and use of communications that have already been unlawfully intercepted.

That does not mean, however, that the crime-tort exception has no impact on claims under §§ 2511(c) and 2511(d). Because those claims are predicated on a communication having already been unlawfully intercepted, whether the crime-tort exception applies (i.e., whether there was an unlawful interception in the first place) can determine whether a violation of either §§ 2511(c) and 2511(d) is even possible.

Here, Plaintiff alleges that Prime violated all three sections of the ECPA—§§ 2511(a), (c), and (d)—by (1) "intercept[ing] Plaintiff's and Class Members' electronic communications via the Meta Pixel, Conversions API and other tracking technologies," [Dkt. No. 1, ¶ 234]; (2) "intentionally disclosing or endeavoring to disclose Plaintiff's and Class Members' electronic communications to affiliates and other third parties, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a)," [*id.* at ¶ 237]; and (3) "intentionally using, or endeavoring to use, the contents of Plaintiff's and Class Members' electronic communications, while knowing or having reason to know that the information was obtained through the interception of an electronic communication in violation of 18 U.S.C. § 2511(1)(a)," [*id.* at ¶ 238].

But, as discussed above, Plaintiff's disclosure and use claims under the ECPA cannot stand unless and until the Court finds, as explained in more detail below, that Prime "intercepted" Plaintiff's communications "for the purpose" of committing a subsequent and distinct tort or crime, which the Court cannot do. Plaintiff's Complaint should be dismissed.

**A. <u>Prime Did Not Intercept Plaintiff's Communications for the Purpose of Committing a Crime or Tort.</u>**

In her Opposition, Plaintiff focuses heavily on the question of whether Prime's alleged disclosure of her information to Facebook constituted a "crime" (under 42 U.S.C. § 1320d-6(a)(3) of HIPAA) or a "tort" (under an invasion of privacy theory). [*See generally* Dkt. No. 16.] But, while answering that question is *necessary* to find that the crime-tort exception applies, it is not *sufficient*. Only if the Court first finds that the defendant intercepted communications in violation of the ECPA *for the purposes of committing a crime or tort* is it necessary to determine whether the subsequent act was, in fact, a crime or tort. *See* 18 U.S.C. § 2511(d).

Indeed, the plain language of the statute makes clear that proof that the

BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

defendant actually committed a crime or tort after making the interception occurred is not necessary for the crime-tort exception to apply. Instead, what is required is proof of the defendant's mindset when he or she intercepted the communication. As the Second Circuit aptly explained:

> If, at the moment he hits "record," the offender does not intend to use the recording for criminal or tortious purposes, there is no violation. But if, at the time of the recording, the offender plans to use the recording to harm the other party to the conversation, a civil cause of action exists under the Wiretap Act.

*Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010).

Furthermore, it makes no difference what the defendant's mindset is when he or she subsequently commits the crime or tort. If the defendant intercepted a communication for a purpose other than committing a crime or tort and then subsequently committed a crime or tort using that intercepted communication, the crime-tort exception does not apply. The defendant has to have the requisite intent *at the time the interception occurs.*

The cases Plaintiff cites in her Opposition do not contradict this unquestionable concept. In fact, most offer little to no analysis on the issue at all. For example, in *B.K. v. Desert Care Network*, No. 223CV05021SPGPDX, 2024 WL 1343305 (C.D. Cal. Feb. 1, 2024), the court failed to draw the distinction between allegations of a subsequently committed crime or tort (there, like here, disclosures in violation of state and federal laws) and allegations that the defendant *intended* to subsequently commit a crime or tort at the time of the interception. *Id.* at * 6. The court simply concluded "that ECPA's one-party consent exception does not apply" because "Plaintiffs allege that Defendants disclosed these communications to Meta in violation of various state tort claims and state and federal laws." *Id.*

Similarly, the court in *Kane v. University of Rochester*, No. 23-CV-6027-FPG, 2024 WL 1178340 (W.D.N.Y. Mar. 19, 2024) focused not on whether the defendant *intercepted* the communications for the purpose of committing a crime or tort but,



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

instead, on whether the defendant *disclosed* the communications for the purpose of violating the law. *Id.* at *7 ("The Court must now determine whether it is plausible that Defendant disclosed Plaintiffs' Private Information 'for the purpose' of knowingly disclosing IIHI in violation of 42 U.S.C. § 1320d-6."). As discussed above, though, that *disclosure* could not have violated the ECPA if the defendant did not possess the requisite mental state at the time the *interception* occurred.

Even in *R.C. v. Walgreens Co.*, Case No. EDCV 23-1933 JGB (SPx), 2024 WL 2263395 (C.D. Cal. May 9, 2024), the court did not actually analyze whether the plaintiff had sufficiently alleged that the defendant *intercepted* the communications for the purpose of committing a tort. Instead, it stated that "even where a defendant is arguably motivated by monetary gain, the crime-tort exception may nonetheless apply if plaintiffs have adequately alleged that the defendant's conduct violated state law, including state law privacy claims," and because the "Plaintiffs have stated a claim for invasion of privacy," the court found that the crime-tort exception applied. *Id.* at *15. Respectfully, the court in *R.C.* got it wrong. With regard to the crime-tort exception under the ECPA, it makes no difference how many crimes or torts the defendant allegedly committed after the interception occurred. What matters is whether the defendant's purpose in intercepting the communication was to commit those crimes or torts.

Not all courts have gotten it wrong, though. For example, the court in *Mrozinski, et al. v. Aspirus, Inc.*, Case No. 23-CV-170[1], explained the fatal flaw in the plaintiffs' rationael there (also the fatal flaw in Plaintiff's rationale here):

> [Plaintiffs' crime-tort exception] arguments seem to elide part of the statutory language. Specifically, the arguments focus on whether Aspirus's conduct actually constituted a violation of one or more of the enumerated crimes or torts, without any attention to Aspirus's purpose. To be illegal, the communication must have been 'intercepted ***for the purpose*** of committing any criminal or tortious act . . . or ***for the***

[1] A true and correct copy of the *Mrozinksi* opinion is attached hereto as Exhibit A.





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

> ***purpose*** of committing any other injurious act.' . . . And here, under the factual allegations of the complaint, the purpose for Aspirus's conduct was 'marketing and/or analytics.' . . . Even if the plaintiffs' factual allegations are construed liberally, they do not support the inference that Aspirus's purpose was criminal, tortious, or otherwise injurious.

[Exhibit A, attached hereto, pp. 9–10.][2]

Four days before *Mrozinski* was decided, the United States District Court for the Northern District of California issued its opinion in *Doe v. Kaiser Foundation Health Plan, Inc.*, No. 23-CV-02865-EMC, 2024 WL 1589982 (N.D. Cal. Apr. 11, 2024), in which it held that the plaintiffs' allegations of HIPAA violations and invasions of privacy were insufficient to trigger the crime-tort exception because the plaintiffs had not adequately alleged that these violations and invasions were the "purpose" of the defendant's interceptions in the first place. *Id.* at *10. According to the court, "the apparent purpose was to use the information collected for market research and consumer analysis solely for the benefit of Kaiser in better reaching and serving its patients." *Id.* at *10.

In her Opposition, Plaintiff attempts to distinguish this case from *Doe* on the ground that, in *Doe*, "there [was] no indication that Kaiser then signed off (either explicitly or implicitly) on the third parties taking that information and using it for their own purposes (and not solely for Kaiser's use)" [Dkt. No. 16, 15:4–8 (quoting *Doe*, 2024 WL 1589982, at *7)], whereas, here, "Prime Healthcare knew that it was disclosing Plaintiff's Private Information to Facebook and that Facebook would use that information to send targeted advertising for its benefit and the benefit of third parties other than Defendant," [*id.* at 15:24–16:1]. Plaintiff's own allegations belie her argument.

As in *Doe*, no facts alleged by Plaintiff in the Complaint would suggest that

[2] Although the court in *Mrozinksi* was analyzing the crime-tort exception under Wis. Stat. § 968.31(2)(c), and not the ECPA, the analysis still applies. The crime-tort exception under § 968.31(2)(c) includes the same statutory language at issue here and, in fact, is broader than the crime-tort exception under the ECPA.



BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Prime was knowledgeable about or complicit in Facebook's alleged use of the information for its own benefit. Plaintiff repeatedly alleges in the Complaint that Prime "chose to use the Pixel data for marketing purposes to bolster ***its*** revenue." [*See, e.g.*, Dkt. No. 1, ¶ 24 (emphasis added); *see also id*. at ¶¶ 8 (alleging that Prime used the Pixel "for its ***own*** pecuniary gain" (emphasis added)), 19 (alleging that "the Pixel collects and discloses a substantial 'data packet' coupled with the FID so that ***Prime*** . . . can, among other things, send targeted advertisements to Users" (emphasis added)), 19 (alleging that "***Prime*** . . . also uses this impermissibly obtained data for analytics purposes to gain additional insights into how its patients use the Web Properties" (emphasis added)), 25 ("Simply put, ***Prime*** . . . puts ***its*** desire for revenue over its patients' privacy rights." (emphasis added)), 55 ("***Prime*** . . . used the data it collected from Plaintiff and Class Members, without their consent, to ***improve its advertising and bolster its revenue***." (emphasis added)), 191 ("One of the ***primary reasons*** that Prime . . . decided to embed the Pixel and other tracking technologies on its Web Properties with the purpose of disclosing Plaintiff's and Class Members' communications to Facebook and other third-party data brokers in order ***to improve marketing by creating campaigns that maximize conversions and thereby decrease costs to Prime Healthcare and boost its revenue***." (emphasis added)), 207 ("[U]tilizing the Pixels directly benefits Prime Healthcare by, among other things, reducing the cost of advertising and retargeting.").]

And, even when Plaintiff does allege that Facebook was using the information it collected for its own benefit, she does not allege that Prime was involved in that or was aware of it. [*See, e.g.*, *id.* at ¶¶ 20 (alleging that "Facebook, in turn, sells Plaintiff's and Class Members' Private Information to third-party marketers who geo-target Plaintiff's and Class Members' Facebook accounts based on that Private Information"), ¶ 117 (alleging that "Facebook then uses that information to sell advertising to Prime Healthcare and other advertisers and/or sells that information to marketers who use it to online target Plaintiff and Class Members."), 140

("Facebook then read[s], underst[ands], and use[s] that Private Information for its own business purposes—i.e., selling targeted advertising to Prime Healthcare and others which specifically targeted those Users based on their health conditions."), 194 ("Facebook, as well, uses this data and analysis for its own commercial purposes, including to improve its platform and better understand the individuals that make up the audiences that its clients (advertisers) pay Facebook to target with ads.").]

In fact, Plaintiffs' own allegations make clear that, if anything, neither Prime nor Facebook had any criminal or tortious intent when utilizing the Pixel. **First**, the fact that the Office of Civil Rights ("OCR") for the Department of Health and Human Services ("HHS") felt the need to issue a "bulletin," updated as recently as March 18, 2024[3], to, in Plaintiff's own words, "make clear . . . that the transmission of such protected information violations HIPAA's Privacy Rule," [Dkt. No. 1, ¶ 42], indicates that Prime did not utilize Pixel ***for the purpose*** of violating HIPAA. Surely, Prime cannot be found to have intended to violate the law in October 2022—the last date on which Plaintiff alleges Prime utilized the Pixel without "data mode enabled," [Dkt. No. 16, ¶ 84]—when the OCR did not even issue its bulletin until after that date.

**Second**, as Plaintiff alleges, when installing the Pixel, Prime was required to agree and did agree "to Facebook's Business Tools Terms by which Facebook requires website owners using the Meta Pixel to 'represent and warrant' that they have adequately and prominently notified users about the collection, sharing and usage of data through Facebook's Business Tools (including the Pixel and Conversions API) and that websites 'will not share Business Tool Data . . . that [websites] know or reasonably should know . . . includes health, financial information or other categories of sensitive information . . . ." [Dkt. No. 1, ¶ 104.]

[3] *See* OCR Bulletin, located at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last visited: May 22, 2024).





BAKER & HOSTETLER LLP
ATTORNEYS AT LAW
COSTA MESA

Thus, contrary to Plaintiff's allegations, Prime's agreeing to Facebook's Business Tools Terms demonstrates that Prime did not intend to provide Facebook with "health information" and, therefore, necessarily did not have the intent to violate HIPAA or invade Plaintiff's privacy when it allegedly intercepted her communications.

In sum, for purposes of this Motion to Dismiss, it does not matter that Plaintiff alleges that Prime violated HIPAA and invaded her privacy when Prime allegedly disclosed her information to Facebook. What matters is whether Prime intended to break the law or commit a tort when it "intercepted" her communications. Nothing in the Complaint even suggests that Prime did. Therefore, the crime-tort exception does not apply, and Plaintiff's Complaint must be dismissed.



### B. **<u>Prime's Alleged Crimes and Torts Are Not Distinct from the Actual Interception.</u>**

Even if Plaintiff had alleged sufficient facts to demonstrate Prime had the requisite intent when it allegedly intercepted her communications (she has not), the crime-tort exception would still not apply because, under Plaintiff's own allegations, the interception and the crime/tort (i.e., disclosure of her information) are one and the same.

Case law makes clear that, to trigger the application of the crime-tort exception, the crime or tort that the defendant intends to commit when intercepting the communication must be separate and independent from the interception itself. *Weston v. Lefiti*, No. 23-CV-0896-L-DDL, 2023 WL 8458249, at *4 (S.D. Cal. Dec. 5, 2023).

Here, Plaintiff does not allege that Prime "intercepted" her communications and then disclosed them to Facebook in violation of HIPAA and her privacy. Instead, she alleges that Prime allowed Facebook to intercept her communications, making any subsequent disclosure by Prime to Facebook unnecessary (i.e., Facebook, according to Plaintiff, already has her information). [Dkt. No. 1,

¶ 139 ("Defendant allows Facebook to 'listen in' on patients' confidential communications.").] Therefore, there is no subsequent act performed by Prime that constitutes a crime or tort. Allowing Facebook to intercept the communications was, in and of itself, the crime and/or tort.

As the Second Circuit stated, "[t]here is a temporal thread that runs through the fabric of the statute and the case law" and "[a] simultaneous tort arising from the act of recording itself is insufficient." *Caro*, 618 F.3d at 99–100. That temporal thread is lacking here. The interception did not precede the disclosure; it was the disclosure. Therefore, Plaintiff has not established that crime-tort exception applies. The Complaint must be dismissed.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Defendant Prime Healthcare Services, Inc. respectfully requests that the Court grant its Motion to Dismiss in full and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted,

Dated: May 24, 2024

**BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
MATTHEW D. PEARSON

*Attorney for Defendant*
PRIME HEALTHCARE SERVICES, INC.

4869-8063-3280.6