Matthew D. Pearson (SBN 294302)
mpearson@bakerlaw.com
**BAKER & HOSTETLER LLP**
600 Anton Boulevard, Suite 900
Costa Mesa, CA 92626-7221
Telephone: 714.754.6600
Facsimile: 714.754.6611

Sarah A. Ballard (*pro hac vice*)
sballard@bakerlaw.com
**BAKER & HOSTETLER LLP**
1801 California Street, Suite 4400
Denver, CO 80202
Telephone: 303-861-0600
Facsimile: 303-861-7805

*Attorneys for Defendant*
PRIME HEALTHCARE SERVICES, INC.

# IN THE UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.S., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PRIME HEALTHCARE SERVICES, INC.,<br><br>Defendant. | Case No.: 5:24-cv-00330-ODW-SP<br><br>**DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S NOTICE AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]**<br><br>Date: September 30, 2024<br>Time: 1:30 p.m.<br>Judge: Otis D. Wright II |

Case 5:24-cv-00330-ODW-SP   Document 29   Filed 09/06/24   Page 2 of 14   Page ID #:281

## I. INTRODUCTION

This Court properly dismissed Plaintiff R.S.'s ("Plaintiff") Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. § 2511 claim as a matter of law and without leave to amend. [Dkt. No. 24 (the "Order").] Specifically, the Court correctly held the party-exception applies while the crime-tort exception—raised and discussed by both parties in response to Prime Healthcare Services, Inc.'s ("Prime" or "Defendant") Motion to Dismiss, [Dkt. No. 13]—did not. As Prime articulated in its Motion to Dismiss and reiterates below, the party-exception applies to Plaintiff's ECPA claim regardless of whether Prime was "acting under color of law," and the crime-tort exception *does not* apply where, as here, Plaintiff's wiretapping claims are inseparable from the alleged transmission of browsing activities on Prime's public website.

Plaintiff now seeks the extraordinary remedy of reconsideration by arguing that the Court committed "clear error" in its Order because it did not "consider and specifically address Plaintiff's argument" concerning the crime-tort exception; namely, Plaintiff's allegation that "Defendant's purpose was to invade Plaintiff's privacy and to violate [HIPAA]." [Dkt. No. 26 ("Motion for Reconsideration" or "Motion") at 4.] However, if the party-exception applies (and all parties agree it does) and Plaintiff's allegations concerning the crime-tort exception are unavailing, then Plaintiff's Complaint was properly dismissed. Further, Plaintiff's Complaint was properly dismissed without prejudice where, as here, amendment would be futile. *See, e.g.*, Mot. to Dismiss at 9–10, 12–13 (noting that courts in this Circuit have rejected the argument that HIPAA violations satisfy the crime-tort exception or that the exception is satisfied when the purpose of the alleged wiretap was to increase revenue or decrease costs) (collecting cases). Notably, Plaintiff predicates her application of the crime-tort exception on Prime's alleged "disclosure of Plaintiff's PHI and PII," which, Plaintiff claims, "is a criminal violation of 42 U.S.C. § 1320d-6(a)(3), [the criminal enforcement provision of the Administrative

1

DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S NOTICE AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]
CASE NO.: 5:24-CV-00330-ODW-SP

Simplification subtitle of HIPAA], which imposes a criminal penalty for knowingly disclosing individually identifiable health information (IIHI) to a third party." [Dkt. No. 16 at 18:16–19.] But in June 2024, the United States District Court for the Northern District of Texas issued an opinion in *American Hospital Ass'n v. Becerra* holding the type of information Plaintiff claims was transmitted to third parties in her case is definitionally excluded as IIHI under HIPAA. No. 4:23-cv-01110-P, 2024 WL 3075865, at *14 (N.D. Tex. June 20, 2024). This decision has now become firmly solidified after the U.S. Department of Health and Human Services ("HHS") withdrew its appeal on August 29, 2024. Any amendment to Plaintiff's complaint is therefore futile because Plaintiff cannot show that Prime committed any criminal or tortious act in the first place, much less a separate criminal or tortious act that Prime had the intent or purpose to commit.

Plaintiff also seems to contend reconsideration is required because other courts interpreted the party and crime-tort exception differently. But disagreement over the outcome of Defendant's Motion to Dismiss does not justify a motion for reconsideration. Indeed, the parties and this Court acknowledge that differing and outlier decisions exist in this newly litigated space, *i.e.*, application of the ECPA to browser behavior on the internet. Nevertheless, courts generally agree that a party cannot intercept its own communications, a party can consent to the interception of its own communications, and, unless, at the time of intercepting, the party possesses the intent to commit a separate crime or tort using the intercepted communication—which Plaintiff here fails to plausibly allege—the crime-tort exception does not apply.

In short, the Court properly found, after considering both parties' extensive arguments on application of the party, consent, and crime-tort exceptions, that the party-exception applied and the crime-tort exception is inapplicable. Accordingly, Prime respectfully requests that the Court deny Plaintiff's Motion for Reconsideration in its entirety.

## II. MOTION FOR RECONSIDERATION STANDARD

Plaintiff moves for reconsideration of the Court's Order dismissing Plaintiff's Complaint with prejudice pursuant to Federal Rule of Civil Procedure 59(e) and Central District of California Local Rule 7-18.

"Reconsideration is an 'extraordinary remedy' to be used sparingly in the interests of finality and conservation of judicial resources." *Secs. & Exch. Comm'n v. Criterion Wealth Mgmt. Ins. Servs., Inc.*, No. 2:20-cv-01402-ODW (JEMx), 2022 WL 3137444, at *1 (C.D. Cal. June 24, 2022) (Wright II, J.) (quoting *Kona Enters., Inc. v. Est. of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000)); *see also Gonzalez v. Farfan*, No. 2:21-cv-00510-ODW (AFMx), 2021 WL 5238785, at *1 (C.D. Cal. June 1, 2021) (Wright II, J.) ("Relief under Rule 59(e) is 'extraordinary' and "should be used sparingly." (quoting *McDowell v. Calderon*, 197 F.3d 1253, 1255 n.1 (9th Cir. 1999)). "To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Stewart v. Wilkie*, Case № 2:18-cv-01887-ODW (SKx), 2020 WL 4286871, at *1 (C.D. Cal. July 27, 2020) (Wright II, J.) (citation omitted). "Reconsideration pursuant to Rule 59(e) 'should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.'" *Id.* (quoting *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003)).

Central District of California Local Rule 7-18 "places additional limits on motions for reconsideration." *Id.* "Grounds for a motion for reconsideration are limited to a material difference in fact or law, the emergence of new facts or law, or a manifest failure to consider material facts." *Ho v. Nationstar Mortg., LLC*, No. 2:19-cv-10532-ODW (JPRx), 2021 WL 4816619, at *1 (C.D. Cal. June 1, 2021) (Wright II, J.).

A motion made to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) may not be used to "relitigate old matters." *Gonzalez*, 2021

WL 5238785, at *1.  Local Rule 7-18 likewise prohibits motions for consideration based on "repe[tition] [of] written argument made in support of the original motion." *Id.* (cleaned up).  "Accordingly, a court may disregard 'repeated legal arguments' and 'facts that were available earlier in the proceedings.'" *Stewart*, 2020 WL 4286871, at *2 (citation omitted).

"Displeasure with the outcome alone is insufficient; unless the moving party shows that one of the factors exists, the court will not grant reconsideration." *Id.* (citations omitted).  "Whether or not to grant reconsideration is committed to the sound discretion of the [trial] court." *Id.* (quoting *Navajo Nation v. Confederated Tribes & Bands of the Yakima Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003)).

Plaintiff argues reconsideration is warranted because the Court allegedly committed "clear error" when it "failed" to address the "applicability of the criminal or tortious exception to the party exemption to Plaintiff's ECPA claim." Mot. at 6.

Clear error occurs when a court is left with a "'definite and firm conviction that a mistake has been committed.'" *Secs. & Exch. Comm'n v. Beck*, Case No.: 2:22-cv-00812-FWS-JC, 2024 WL 2110034, at *2 (C.D. Cal. Apr. 1, 2024) (quoting *Smith v. Clark Cty. Sch. Dist.*, 727 F.3d 950, 955 (9th Cir. 2013)). "In order to prove that the Court committed clear error, Plaintiff must demonstrate that the Court's action fell clearly outside the bounds of its authority." *Powell v. Comm'r of SSA*, No. CV-21-00054-PHX-SMB, 2021 WL 794262, at *1 (D. Ariz. Mar. 2, 2021) (citation omitted).  "If the propriety of the Court's judgment is a debatable question, there is no clear error and the motion to reconsider is properly denied." *Id.*  Here, Plaintiff's argument fails to rise to the level of clear error. Instead, Plaintiff wants to Court to simply reconsider its prior arguments without citing to any new facts or law.

4

DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S NOTICE AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]
CASE NO.: 5:24-CV-00330-ODW-SP

### III. ARGUMENT

#### A. The Court Correctly Found that the Party-Exception Applied.

The Court properly found the party-exception to § 2511(2)(d) applied. As Defendant explained in its Motion to Dismiss at 8–9, although § 2511(2)(d) does provide a crime-tort statutory carve out to the "party exception," the crime-tort carve out applies only when there are plausible allegations that the defendant unlawfully used or disclosed the communication *independent* of the alleged interception at issue. *See Doe I v. Google LLC*, Case No. 23-cv-02431-VC, 2024 WL 3490744, at *4 (N.D. Cal. July 22, 2024) (dismissing plaintiffs' ECPA claim in data pixel case and finding crime-tort exception inapplicable because "for [the] [crime-tort] exception to the [party] exception to apply, the 'criminal or tortious purpose must be separate and independent from the act of the recording.'" (quoting *Planned Parenthood Fed. of Am. v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022)). Further, courts in the Ninth Circuit refuse to apply the crime-tort exception where, as here, a plaintiff's affirmative allegations establish that the defendant's primary motivation in allegedly intercepting the communications was making money, *not* injuring plaintiff. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) (noting in context of injunction that "[m]ultiple courts in this district have found that the crime-tort exception to the [federal] Wiretap Act is inapplicable where the defendant's primary motivation was to make money"). Indeed, "[t]o ultimately succeed on this claim, [P]laintiff[] must show that the purpose for [Defendant]'s interception was to injure plaintiffs tortiously." *Id.* Thus, if the Court concluded that (a) the "party exception" applied—and it correctly did—and (b) there was no basis for application of the crime-tort exception, then the Court's ruling should stand. Plaintiff cannot attempt to circumvent the party-rule by requiring the Court to re-analyze and re-articulate its basis for dismissal. *See, e.g.*, *Cohen v. Casper Sleep Inc.*, 17cv9325, 2018 WL 3392877, at *4 (S.D.N.Y. July 12, 2018) (denying plaintiff's attempt to "circumvent the consent

Baker & Hostetler LLP
Attorneys at Law
Costa Mesa

rule" by evocation of the "crime/tort exception," because "while disturbing, [plaintiff] [could] not contort Defendants' surreptitious conduct into an illegal wiretap claim where consent bars such claims"); *Nienaber v. Overlake Hosp. Med. Ctr.*, Case No. 2:23-cv-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) (crime-tort exception "d[id] not apply" in data pixel case where defendant was party to communications at issue and plaintiff "fail[ed] to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission" and "Plaintiff point[ed] to no legal authority providing that the exception to § 2551(2)(d) is triggered when, . . . the tortious conduct is the alleged wiretapping itself" (citation omitted)).

Plaintiff likewise cannot avoid the Court's ruling by pointing to cases that denied motions to dismiss ECPA claims in data pixel cases since Plaintiff filed her opposition. Mot. at 9–10. Indeed, there are multiple cases that have *granted motions to dismiss ECPA claims* in data pixel healthcare cases just like this one (as well as others), including even more recently than the cases cited by Plaintiff in her Motion. *See, e.g.*, *T.D. v. Piedmont Healthcare, Inc.*, CIVIL ACTION FILE NO. 1:23-CV-5416-TWT, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (dismissing ECPA claim based on party exception and noting that the "weight of persuasive authority in similar pixel tracking cases supports [Defendant]'s position") (collecting cases); *Andrews v. Prisma Health*, Case No. 6:23-cv-03153-JDA, 2024 WL 3861384, at *7 (D.S.C. Aug. 16, 2024) (granting motion to dismiss ECPA claim on standing grounds because "Plaintiff's alleged harm [wa]s not closely related to the tort of disclosure of private information" because "nothing in the Complaint allege[d] what happened with Plaintiff's Private Information after it was disclosed to Facebook . . . nothing in the Complaint specifically allege[d] that Facebook sold Plaintiff's Private Information or that Plaintiff received targeted marketing after using the Website . . . [and] nothing in the Complaint allege[d] that any person at Facebook accessed or viewed Plaintiff's Private Information"); *Roe*

6

DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S NOTICE AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]
CASE NO.: 5:24-CV-00330-ODW-SP

*v. Amgen*, Case No. 2:23-cv-07448-MCS-SSC, 2024 WL 2873482, at *6, *9 (C.D. Cal. June 5, 2024) (dismissing ECPA without leave to amend "pursuant to the one-party consent provision"); *Smart v. Main Line Health*, CIVIL NO. 22-5239, 2024 WL 2943760, at *3–4 (E.D. Pa. June 10, 2024) (crime-tort exception did not apply because "Plaintiff fail[ed] to state what specific HIPAA-protected information Plaintiff himself provided to Defendant via his browsing activity that was subsequently disclosed to Meta. Without such factual allegations, the Amended Complaint consist[ed] of nothing more than bare-bone conclusions which are insufficient to withstand dismissal"); *Rodriguez v. FastMed Urgent Care, P.C.*, No. 5:23-CV-403-D, 2024 WL 3541582, at *5, *6 (E.D.N.C. July 24, 2024) (party-exception to ECPA applied and plaintiff failed to show applicability of crime-tort exception because "merely alleging that FastMed intercepted and disclosed Rodriguez's information to Meta for commercial use or gain, . . . does not equate to FastMed intercepting and disclosing Rodriguez's information 'for [the] purpose of committing any criminal or tortious act'"); *see also Doe I*, 2024 WL 3490744, at *5 (dismissing ECPA claim against Google and finding allegations did not satisfy crime-tort exception); and *Brown v. Learfield Commcn's*, NO. 1:23-CV-00374-DAE, 2024 WL 3676709, at *5 (W.D. Tex. June 27, 2024) *appeal filed* Aug. 5, 2024 (dismissing ECPA claim and finding crime-tort exception inapplicable).

## B. The Court Considered the Crime-Tort Exception And Found It Unpersuasive.

Contrary to Plaintiff's assertions, the Court did consider her arguments concerning the applicability of the crime-tort exception, and found that her ECPA claim would still fail. Indeed, the Court noted that both parties addressed the crime-tort exception extensively, but nevertheless found that, "even if the Court were to consider the merits of [the] argument [concerning the crime-tort exception], *the ECPA 'contain[s] an exemption from liability for a person who is a 'party' to the communication, whether acting under color of law or not*." Order at 4 (emphasis

7

added). In other words, the Court correctly held that, *regardless* of whether Prime was acting criminally or tortiously, because Prime was a party to the communication, no liability under the ECPA can lie for the "wiretap" at issue unless Plaintiff can show Prime intended to use the intercepted communications for a separate and independent crime or tort. This is unsurprising, as the ECPA party-exception was drafted to shield from liability actions sounding in fraud or deceit by a party to the communication at issue, *i.e.*, police officers "impersonating" the intended recipient of a communication. *See In re Google Inc. Cookie Placement Consumer Privacy Litig.*, 806 F.3d 125, 144 (3d Cir. 2015) (concluding "it was by design that there is no statutory language by which the defendants' various alleged deceits would vitiate their claims to be parties to the relevant communications. The Wiretap Act is a wiretapping statute, and just because a scenario sounds in fraud or deceit does not mean it sounds in wiretapping"); *see also Sussman v. Am. Broad. Cos., Inc.*, 186 F.3d 1200, 1202–03 (9th Cir. 1999) ("Where the taping is legal, but is done for the purpose of facilitating some further impropriety, such as blackmail, section 2511 applies. Where the purpose is not illegal or tortious, but the means are, the victims must seek redress elsewhere.").

The Court need not revise its decision to provide Plaintiff more explanation why the crime-tort exception does not apply under the facts alleged, or explain further why it disagrees with those courts who interpreted the party and/or crime-tort exceptions differently. *See, e.g.*, *Morgan v. Bank of Am., N.A.*, NO. 2:20-CV-00157-SAB, 2020 WL 5026857, at *3 (E.D. Wash. Aug. 25, 2020) (denying motion for reconsideration when defendant alleged court "committed clear error in its application of [case interpreting the futility doctrine]"); *see also Byars v. Hot Topic, Inc.*, 656 F. Supp. 3d 1051, 1066 (C.D. Cal. 2023) (declining to reach issue of consent in CIPA claim and determining "it [wa]s not the issue here"). Indeed, Plaintiff also acknowledges in her Motion that other courts have likewise not provided an extensive analysis of the application of the crime-tort exception. For

8

DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S NOTICE AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]
CASE NO.: 5:24-CV-00330-ODW-SP

example, Plaintiff herself states that "in *Williams v. Dukehealth*, the court *did not address* the applicability of the crime-tort exception to the ECPA" Mot. at 9 (emphasis added). Indeed, the *Williams* court, like the Court here, concluded that, "[b]ecause the Amended Complain allege[d] that the Defendant was a party to the communications and Plaintiff voluntarily sent them to Defendant, her claim of a violation of the ECPA should be dismissed." Case No. 1:22-CV-727, 2024 WL 898051, at *8 (M.D.N.C. Mar. 1, 2024). This was so even though plaintiffs in *Williams* argued the crime-tort exception applied. *See* Case No. 1:22-CV-727, Dkt. No. 26 ("Opp'n to Mot. to Dismiss Compl.") at 12–13 ("Defendants cannot escape liability by claiming they could consent to Facebook's interception of Plaintiffs' communications on their patient portals 'as a party to the to the communication' [because] Plaintiffs have alleged that in procuring Facebook's interception by placing the Pixel on their patient portals, 'Defendants had a purpose that was tortious, criminal, and designed to violate federal and state legal and constitutional provisions.'"); Dkt. No. 50 ("Opp'n to Mot. to Dismiss Amended Compl.") at 13 (stating defendant's case law was inapposite because defendants in cases cited did not "engage[] in conduct that is prohibited by federal regulation, such as HIPAA. Here, Defendant did not act in 'the ordinary course' of its services or engage in 'lawful' interception . . . when it intentionally placed the Pixel on Plaintiff's Patient Portal to transmit private patient data or disclosed the information to Facebook"). And on August 28, 2024, the *Piedmont* Court dismissed an ECPA claim in a data pixel healthcare class action without analyzing the crime-tort exception at all (even though it acknowledged plaintiff had raised it), instead holding only that the party-exception applied and the "weight of persuasive authority in similar pixel tracking cases support[ed] Piedmont's position." 2024 WL 3972984, at *4.

### C. The Court Properly Dismissed Plaintiff's ECPA Claim With Prejudice.

Finally, this Court is not alone in dismissing with prejudice ECPA claims premised on the same or similar allegations. Indeed, this Court in *Roe*, 2024 WL 2873482, at *6, *9, dismissed an ECPA claim in a data pixel healthcare case without leave to amend "pursuant to the one-party consent provision" after plaintiff's allegations following *two* amended complaints were insufficient to establish the crime-tort exception. *See also Piedmont*, 2024 WL 3972984, at *4 (dismissing ECPA claim but permitting other claims to proceed without prejudice); *Brown*, 2024 WL 3676709, at *5 (dismissing with prejudice ECPA claim in data pixel case when plaintiff conceded defendant was party to the communications at issue and when crime-tort exception was inapplicable because plaintiff failed to allege an underlying crime or intent or defendant's intent to commit a crime or tort, and when "the defects identified by the Court [wer]e uncurable"); and *Santoro v. Tower Health*, CIVIL ACTION NO. 22-4580, 2024 WL 1773371, at *4, *7 (E.D. Pa. Apr. 24, 2024) (dismissing ECPA claim with prejudice after permitting attempts to amend because post-amendment allegations "lack[ed] specific examples of what HIPAA-protected information from plaintiffs was transferred to Meta" to satisfy crime-tort exception to ECPA based on alleged HIPAA violation). And dismissal without leave to amend should be granted if the Court determines that amendment would not be futile, which Defendant urges it would be in these circumstances. *See Espinoza v. Union of Am. Physicians & Dentists, AFSCME Local 206*, 562 F. Supp. 3d 904, 913 (C.D. Cal. Mar. 16, 2022).

Further, Plaintiff's ECPA claim was properly dismissed with prejudice because her basis for arguing that the crime-tort exception applies here has definitively disappeared as of August 29, 2024. Specifically, as Prime explained in its Notice of Supplemental Authority in Support of its Motion to Dismiss [Dkt. No. 22], Plaintiff's assertion that Prime committed a separate crime or tort

10

DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S NOTICE AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]
CASE NO.: 5:24-CV-00330-ODW-SP

sufficient to satisfy the crime-tort exception is premised on the argument that Prime criminally violated HIPAA when it disclosed Plaintiff's PHI and PII (in combination, Plaintiff's IIHI), in contravention of § 1320d-6(a)(3), the criminal enforcement provision of the Administrative Simplification subtitle of HIPAA, which prohibits the disclosure of IIHI to a third party." [*See* Dkt. No. 16 at 18:16–19 (citing Dkt. No. 1 at ¶ 240 ("Defendant transmitted Plaintiff R.S.'s [Facebook ID], computer IP address, location, and information such as her medical conditions including menopause, treatment sought, appointment type, physician selected including gynecologist and podiatrist, and button/menu selections to Facebook."))]. The U.S. District Court for the Northern District of Texas confirmed that the type of information Plaintiff alleges is IIHI here is definitionally excluded as IIHI under HIPAA's criminal enforcement provision, *see Becerra*, 2024 WL 3075865, at *14 (stating that, "even after multiple speculations, the Proscribed Combination could never fit HIPAA's definition of IIHI")[1], and on August 29, 2024, the HHS withdrew its appeal to the *Becerra* decision, *see American Hospital Ass'n v. Becerra*, Case Nos. 24-10775, Dkt. No. 10 (5th Cir.), leaving the *Becerra* court's decision standing. Accordingly, Plaintiff's Complaint was properly dismissed with prejudice because she has no basis for showing the crime-tort exception applies.

In short, because the crime-tort exception does not apply and amendment to plead facts satisfying the crime-tort exception under the circumstances would be futile, Plaintiff's Motion should be denied. *See Yenidunya Invests., Ltd. v. Magnum Seeds, Inc.*, No. CIV. 2:11–1787 WBS CKD, 2011 WL 6101015, at *3 (E.D. Cal. Dec. 7, 2011) ("This is not a case in which more specific pleading would avoid the problems raised in the motion to dismiss. Plaintiff is requesting leave to amend so that it may add a fact that the court has already discussed and that arguably already

---

[1] The *Becerra* court defines "Proscribed Combination" as "(1) an individual's IP address with (2) a visit to a UPW [an unauthenticated public webpage, *i.e.*, a "website[] that do[es]n't require login credentials or user verification] addressing specific health conditions or healthcare providers." 2024 WL 3075865, at *2, *7.

appears on the face of the Complaint. Plaintiff's request amounts to no more than a transparent attempt to use the liberal amendment rules in order to employ a different legal strategy to re-argue a motion it has lost. Such an attempt serves neither the interest of justice nor judicial economy.").

## IV. CONCLUSION

For the foregoing reasons, Defendant Prime Healthcare Services, Inc. respectfully requests that the Court deny Plaintiff's Motion for Reconsideration in its entirety. *See F.D.I.C. v. Cage*, 810 F. Supp. 745, 747 (S.D. Miss. 1993) (denying motion for reconsideration because, "[w]hile Defendants contend[ed] that the Court misinterpreted Mississippi law concerning negotiable instruments, Defendants' motion merely expresse[d] disagreement with the findings of the Court and fail[ed] to demonstrate a 'clear error of law' or 'manifest injustice'"). If the Court disagrees, Defendant urges the Court to nevertheless uphold its dismissal of the ECPA claim without prejudice. *See, e.g.*, *B.K. v. Eisenhower Med. Ctr.*, Case No. EDCV 23-2092 JGB (DTBx), 2024 WL 2037404, at *4 (C.D. Cal. Apr. 11, 2024) (affirming dismissal of ECPA claim and finding crime-tort exception did not apply, but converting dismissal with prejudice to one without to allow plaintiff to attempt to cure pleading deficiencies as to ECPA claim).

Respectfully submitted,

Dated: September 6, 2024         **BAKER & HOSTETLER LLP**

By: */s/ Matthew D. Pearson*
    MATTHEW D. PEARSON

*Attorney for Defendant*
PRIME HEALTHCARE SERVICES, INC.

**C.D. Cal. L.R. 11-6.2 Certificate of Compliance**

The undersigned, counsel of record for Defendant Prime Healthcare Services, Inc., certifies that this brief does not exceed 25 pages and contains 3,996 words, which complies with the word limit set forth in Section VII(A)(3) of the Court's Standing Order and with the word limit of L.R. 11-6.1.

*/s/ Matthew D. Pearson*
MATTHEW D. PEARSON

Baker & Hostetler LLP
Attorneys at Law
Costa Mesa

13

DEFENDANT PRIME HEALTHCARE SERVICES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S NOTICE AND MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]
CASE NO.: 5:24-CV-00330-ODW-SP