Matthew J. Langley (SBN 342846)
**ALMEIDA LAW GROUP LLC**
849 W. Webster Avenue
Chicago, Illinois 60614
t: 312-576-3024
matt@almeidalawgroup.com

John R. Parker, Jr. (SBN 257761)
**ALMEIDA LAW GROUP LLC**
3550 Watt Avenue, Suite 140
Sacramento, California 95608
t: 916-616-2936
jrparker@almeidalawgroup.com

*Attorneys for Plaintiff & the Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| R.S., *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> PRIME HEALTHCARE SERVICES, INC., <br><br> Defendant. | Case No. 5:24-cv-00330-ODW-SP <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR RECONSIDERATION OF ORDER ON MOTION TO DISMISS [24]** <br><br> Date: September 23, 2024 <br> Time: 1:30 p.m. <br> Judge: Judge Otis D. Wright, II |

## I. INTRODUCTION

Plaintiff R.S. filed her Class Action Complaint because, unbeknownst to her and the putative class members, Prime Healthcare Services, Inc. ("Prime Healthcare" or "Defendant") installed undetectable tracking pixels on its websites for its hospitals and its web-based patient portals (collectively, the "Web Properties"). *See* ECF No. 1 ("Complaint" or "Compl."), ¶¶ 7-9. The tracking pixels transmit an incredible amount of personal and protected data about its patients and website users, including personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") to Meta Platforms, Inc., d/b/a Meta ("Meta" or "Facebook"). *Id.* Notably, at no point in this litigation has Defendant denied using tracking pixels to disclose its patients' Private Information or stated that it disclosed that it was secretly collecting and sharing their most sensitive health information with third parties. *See generally* ECF No. 13.

Plaintiff's Complaint alleged violations of the Electronic Communications Privacy Act ("ECPA") on behalf of herself and a putative class of patients whose information was unlawfully disclosed to third parties, including Facebook, without consent. *See* Compl. ¶¶ 223-54. On August 7, 2024, the Court granted Defendant's Motion to Dismiss with prejudice, relying on the party exemption to the ECPA without separately addressing Plaintiff's argument that the crime-tort exception rendered the party exemption inapplicable. *See* ECF No. 24 ("Order").

On August 21, 2024, Plaintiff asked the Court to reconsider and amend its Order on the ground that the Court did not address the crime-tort exception. *See* ECF No. 26 ("Motion"). Alternatively, Plaintiff sought leave to amend her Complaint under Federal Rule of Civil Procedure 15(a). *Id.* at 10. Defendant's opposition to the Motion attempts to back channel and speak for the Court to find some implicit consideration of the crime-tort exception in its Order. *See*

ECF No. 29 ("Opposition"). But in doing so, Defendant misrepresents the Court's actual language and reasoning in the decision. There is simply no support for Defendant's insistence that the Order addressed the crime-tort exception when it granted dismissal without leave to amend based on the one-party consent exemption.

## II. ARGUMENT

### 1. The Court Never Considered the Crime-Tort Exception.

Plaintiff's narrow request asks only that the Court reconsider its Order dismissing her ECPA claim because it did not directly address her argument regarding the applicability of the crime-tort exception. *See* Motion at 1. Here, the Order did not evaluate the sufficiency or plausibility of Plaintiff's allegations that Defendant criminally violated HIPAA's privacy rule. *See, e.g.*, Compl., ¶¶ 141-59 & 239-42. Yet where plaintiffs have plausibly alleged a violation of HIPAA (a crime) or invasion of privacy (a common law state tort), courts have uniformly denied motions to dismiss ECPA claims. *See* Opposition to Motion to Dismiss ("Opp. to MTD"), ECF No. 16 at 8 (collecting cases); *see also* Motion at 9-10 (collecting additional cases post-dating the Order).

In opposing Plaintiff's request, Defendant baldly asserts that the Court "did consider [Plaintiff's] arguments concerning the applicability of the crime-tort exception." *See* Opposition at 7. In putative support, Defendant points to one sentence in the Court's Order, inserts brackets to support its claim, and omits the case quoted by the Court in that very same sentence. *Id.* Defendant does this to claim that "the Court noted that both parties addressed the crime-tort exception extensively, but nevertheless found that, 'even if the Court were to consider the merits of [the] argument *[concerning the crime-tort exception]*, the ECPA 'contain[s] an exemption from liability for a person who is a 'party' to the communication, whether acting under color of law or not.'"

1  *Id.* (citing Order at 4) (emphasis added). But the Court did no such thing.

2       To be clear, the reference to the "crime-tort exception" on which
3  Defendant relies was inserted in brackets by Defendant—not the Court.
4  *Compare id.*, *with* Order at 4. As the text of the Order and the cases to which
5  it cites demonstrate, the analysis the Court is referring to in Defendant's
6  cherry-picked sentence is the applicability of the party exemption to the
7  ECPA. Both the plain text of the Court's Order and the case it cites evidence
8  that the Court's analysis focused solely on whether Prime Healthcare was a
9  party to the communications in question. *In re Facebook, Inc. Internet*
10 *Tracking Litigation*, the case the Court cites but which Defendant fails to
11 include in its Opposition, holds that the party exemption did not apply to
12 defendant Facebook because "simultaneous, unknown duplication and
13 communication of GET requests do not exempt a defendant from liability
14 under the party exception." Order at 4 (citing 956 F.3d 589, 607 (9th Cir.
15 2020)). But the court in *In re Facebook* did not address (nor did the parties
16 brief) the question of the applicability of the crime-tort exception. *See id*.

17      The Court's citation of *In re Google Inc. Cookie Placement Consumer*
18 *Privacy Litigation* further confirms Plaintiff's position that the Court only
19 considered the one-party exemption to ECPA liability. *See* Order at 4 (citing
20 806 F.3d 125, 143 (3d Cir. 2015) ("[T]he intended recipient of a
21 communication is necessarily one of its parties.")). Plaintiff's conclusion is
22 also consistent with the preceding paragraph in the Order which addresses only
23 "Prime Healthcare's argument that it cannot unlawfully intercept a
24 communication to which it is a party." *Id*. Ultimately, Prime Healthcare
25 misrepresents the argument to which the Court is referring and relies on its
26 own misrepresentation to try to support its untenable position that the Order
27 addressed Plaintiff's crime-tort argument.

28

Defendant's protestation that the Court need not "provide Plaintiff *more* explanation why the crime-tort exception does not apply" misses the mark. Opposition at 8. Plaintiff's Motion rests not on the Order's need to provide more explanation but that the Order did not address the crime-tort exception at all. Defendant acknowledges this point when it cites two cases that similarly failed to address the crime-tort exception argument in dismissing ECPA claims. *See* Opposition at 9 (citing *T.D. v. Piedmont Healthcare, Inc.*, 2024 WL 3972984, at *4 (N.D. Ga. Aug. 28, 2024) (dismissing ECPA claim without addressing the argument that the crime-tort exception applied); *Williams v. Dukehealth*, 2024 WL 898051, at *8 (M.D.N.C. Mar. 1, 2024) (same)). But the courts' error in those cases does nothing to prevent the need for reconsideration here. The statute itself makes clear that the party exemption applies "unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C.A. § 2511(2)(d).

### 2. Defendant's Opposition Merely Rehashes Arguments from its Motion to Dismiss.

Defendant acknowledges that "§ 2511(2)(d) does provide a crime-tort statutory carve out to the 'party exception'" but then rehashes its argument that "the crime-tort carve out applies only when there are plausible allegations that the defendant unlawfully used or disclosed the communication independent of the alleged interception at issue." Opposition at 5. However, Plaintiff addressed this argument in its Opposition to the Motion to Dismiss, explaining that the Complaint's allegations and relevant case law support the finding that Defendant's disclosure of Plaintiff's Private Information was separate and independent from its interception. *See* Opp. to MTD at 13-17; *see also A.D., et al. v. Aspen Dental Mgmt. Inc.*, 2024 WL 4119153 *3 (N.D. Ill. Sept. 9, 2024) ("*Aspen Dental*") ("Even if the crime-tort exception did require an act

1  distinct from the alleged wiretapping, Plaintiffs plausibly allege that Aspen
2  intended to violate the HIPAA when it transmitted Plaintiffs' information to
3  third parties, which is distinct from the improper interception at issue in the
4  ECPA claim.").

5  Defendant also attempts to bolster its case for the inapplicability of the
6  crime-tort exception by pointing to recent out-of-district pixel-related cases
7  that have dismissed ECPA claims. *See* Opposition at 6-7. But each of those
8  cases is inapposite and/or failed to adequately address the crime-tort exception.
9  *See Andrews v. Prisma Health*, 2024 WL 3861384, at *11 (D.S.C. Aug. 16,
10 2024) (dismissing without prejudice on ground that plaintiff lacked standing
11 pursuant to Rule 12(b)(1); *Smart v. Main Line Health*, 2024 WL 2943760, at
12 *3 (E.D. Pa. June 10, 2024) (dismissing without prejudice where plaintiff's
13 allegations were not sufficient to establish that communications included
14 individually identifiable health information); *Rodriguez v. FastMed Urgent
15 Care, P.C.*, 2024 WL 3541582, at *6 (E.D.N.C. July 24, 2024) (dismissing
16 without prejudice where plaintiff alleged commercial gain as the predicate for
17 crime-tort exception, not a violation of HIPAA or common law claim); *Doe I
18 v. Google LLC*, 2024 WL 3490744, at *5 (N.D. Cal. July 22, 2024) (dismissing
19 without prejudice because plaintiff failed to allege Google intentionally
20 intercepted their personal health information and parties did not rely on the
21 crime-tort exception); *Brown v. Learfield Commc'ns, LLC*, 2024 WL 3676709,
22 at *5 (W.D. Tex. June 27, 2024) (dismissing because the alleged tortious act,
23 a violation of the Video Privacy Protection Act, had already been dismissed
24 and contrasting with cases where an alleged violation of HIPAA "was
25 sufficient to state a claim under the crime-tort exception.); *see also Piedmont
26 Healthcare*, 2024 WL 3972984, at *4 (failing to address plaintiff's argument
27 that the crime-tort exception applies).

28  However, this case differs markedly from those that Defendant cites,

and to the extent that the Court finds them persuasive, those courts erred by not considering the crime-tort exception. More importantly, the application of the crime-tort exception is necessary where plaintiff plausibly alleges—like here—that defendant's purpose was to commit a criminal or tortious act. *See* Compl. ¶¶ 223-54. In fact, Courts nationwide and in this district that have addressed the crime-tort exception to the party exemption where plaintiffs have made such allegations have denied motions to dismiss ECPA claims. *See* Motion at 9-10 (collecting cases); *see also Aspen Dental*, 2024 WL 4119153 at *3 (rejecting defendant's argument that the crime-tort exception did not apply because the underlying act must be distinct from the alleged interception & denying motion to dismiss ECPA claim because "Plaintiffs plausibly allege that Aspen intended to violate the HIPAA when it transmitted Plaintiffs' information to third parties, which is distinct from the improper interception at issue in the ECPA claim.").

### 3.  The Decision in *AHA* Does Not Foreclose Plaintiff's Claims.

Finally, Prime Healthcare is simply wrong when it argues that the Northern District of Texas' decision in *American Hospital Association v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ("*AHA*") would make any amendment to Plaintiff's Complaint futile. *See* Opposition at 10-11. The claim that any "basis for arguing that the crime-tort exception applies here has definitively disappeared as of August 29, 2024" is factually and legally incorrect. *Id.* at 10. The longstanding prohibitions in HIPAA and common law claims for invasion of privacy remain viable claims. *See Aspen Dental*, 2024 WL 4119153 at *3 (denying motion to dismiss ECPA claim post-*AHA* because "Plaintiffs allegations are sufficient to invoke HIPAA for purposes of the ECPA's crime-tort exception").

Defendant incorrectly contends that *AHA* rendered the Private Information disclosed here outside the purview of HIPAA's definition of

1  individually identifiable health information ("IIHI"). *Id*. But the Court in *AHA* focused *only* on evaluating whether the Department of Health and Human Services ("HHS") exceeded its authority when it issued guidance that included circumstances where an online technology connects (i) an individual's internet protocol ("IP") address with (ii) a visit to an unauthenticated public website ("UPW") addressing specific health conditions or healthcare providers (defined as the "Proscribed Combination"). *See* 2024 WL 3075865, at *2.

This case, however, does not concern the use by Plaintiff of unauthenticated or public websites and the concomitant disclosure of her IP address. Rather, this case challenges Prime Healthcare's use of tracking technologies, including the Meta Pixel, to collect and to disclose Plaintiff's sensitive health information, including IIHI, to third parties—such as Meta—without her informed consent. *See, e.g.*, Compl., ¶¶ 22, 73, 87 & 117. The disclosure of Plaintiff's information in this manner falls within the traditional purview of health information meant to be protected by HIPAA.

Prime Healthcare's obligation to protect IIHI is not changed or in any way diminished by the holding in *AHA*. Instead, the decision reinforces the notion that website users, such as Plaintiff, who navigate Defendant's Web Properties have a reasonable expectation of privacy when they, among other things, (i) search for conditions and treatments related to their medical care, (ii) book an appointment for themselves or (iii) pay medical bills. And *AHA* makes it clear that Prime Healthcare violated Plaintiff's privacy rights when it disclosed her personally identifiable sensitive and private health information to third parties through the use and implementation of various tracking technologies; from the Court in *AHA*:

- "The Revised Bulletin contains an array of guidance for covered entities, much of which is both legally and pragmatically sound.";

- "Like most guidance documents, the Original Bulletin reminded covered entities of their obligation to protect IIHI";

- Stating that the court's limited vacatur of the Revised Bulletin with respect to the Proscribed Combination "is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document"

*See* 2024 WL 3075865, at *2, at *4, n.3 & at *31, n.3; *see also* ECF No. 23, Response to Defendant's Notice of Supplemental Authority, at 3-4.

Moreover, *AHA* governs only a discrete issue not germane to any of Plaintiff's claims as none of them are based on a violation of the HHS Guidance. Courts have routinely denied motions to dismiss ECPA claims post *AHA* in cases where, like here, the unlawful collection and disclosure of PHI that is more sensitive than IP addresses. *See, e.g., Cooper v. Mount Sinai Health Sys., Inc.*, 2024 WL 3586357, at *9 (S.D.N.Y. July 30, 2024) (denying motion to dismiss ECPA claim where crime-tort exception applied); *In re BetterHelp, Inc. Data Disclosure Cases*, 2024 WL 3416511, at *4 (N.D. Cal. July 15, 2024) (finding crime-tort exception to applied because defendant disclosed "its customer's sensitive mental health-related information in violation of HIPAA."); *Smith v. Loyola Univ. Med. Ctr.*, 2024 WL 3338941, at *7 (N.D. Ill. July 9, 2024) (same).

## III. CONCLUSION

For the reasons stated above and as explained in Plaintiff's Motion to Reconsider, Plaintiff respectfully requests that this Honorable Court reconsider and amend its Order granting dismissal of Plaintiff's claim for violation of the ECPA without leave to amend. In the alternative, Plaintiffs requests leave to her Complaint.

| | | |
|---|---|---|
| 1 | **DATED**: September 16, 2024 | */s/ Matthew J. Langley* |
| 2 | | Matthew J. Langley (SBN 342846) |
| 3 | | **ALMEIDA LAW GROUP LLC** |
| | | 849 W. Webster Avenue |
| 4 | | Chicago, Illinois 60614 |
| 5 | | t: 312-576-3024 |
| | | matt@almeidalawgroup.com |
| 6 | | |
| 7 | | John R. Parker, Jr. (SBN 257761) |
| | | jrparker@almeidalawgroup.com |
| 8 | | **ALMEIDA LAW GROUP LLC** |
| | | 3550 Watt Avenue, Suite 140 |
| 9 | | Sacramento, California 95608 |
| 10 | | t: 916-616-2936 |
| 11 | | *Attorneys for Plaintiff & the Class* |
| 12 | | |
| 13 | | Daniel Srourian |
| | | California Bar No. 285678 |
| 14 | | **SROURIAN LAW FIRM, P.C.** |
| | | 3435 Wilshire Blvd. Suite 1710 |
| 15 | | Los Angeles, CA 90010 |
| 16 | | daniel@slfla.com |
| 17 | | *Attorneys for Plaintiff & the Class* |